```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Steven S. Brown,                :

        Plaintiff,     :   Civil Action 2:07-cv-0013

   v.                           :   JUDGE FROST

Warden Voorhies, et al.,        :

        Defendants.    :

ORDER AND REPORT AND RECOMMENDATION

    This prisoner civil rights action is before the Court on the motion to dismiss filed by defendants the Honorable Judge Lisa L. Sadler and the Honorable Judge Guy L. Reece (doc. #33), the plaintiff's response to the defendants' motion to dismiss (doc. #72), and the defendants' reply (doc. #74). For the following reasons, it will be recommended that the motion be granted and that the claims against Judge Sadler and Judge Reece be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

                                        I.

    Judge Sadler and Judge Reece were, at all relevant times, judges of the Franklin County, Ohio Court of Common Pleas. They both presided over state court proceedings in which Mr. Brown was a party. The Court will summarize the allegations against each of them, based on the pleadings which Mr. Brown has filed.

    The factual allegations against Judge Sadler include her failure to take action when Mr. Brown complained to her about being kept awake every night before trial and her refusal to take him out of "duress", i.e. the constant abuse and horrible conditions he was forced to endure at the Franklin County jail. The complaint also states that Judge Sadler violated Mr. Brown's due process rights when she refused him a new lawyer and forced

him to go to trial on the same day she made him pro se. Mr. Brown further avers that after the state court of appeals overturned his murder conviction, Judge Sadler refused to have him returned from state custody for a retrial because she was running for a seat on the same court of appeals and did not want the publicity that would entail from his return. As a result, Mr. Brown was forced to file for a writ in order to effect his transfer back to the Franklin County jail to await a new trial. When this transfer finally took place, Mr. Brown claims that Judge Sadler would not allow him into her courtroom despite conducting four hearings in his criminal case. He alleges that, in fact, he was not permitted to be in court for over a year and not until Judge Sadler had left the common pleas bench to assume her new duties on the court of appeals. Mr. Brown maintains that throughout the period in which Judge Sadler oversaw his criminal case, she struck his demands for a speedy trial and for pro se status and deliberately violated his rights to a speedy trial and to conduct his own defense. Lastly, Mr. Brown says that although he complained to Judge Sadler about conditions at the jail, she took no action.

    Many of the allegations against Judge Reece are the same or similar to those made against Judge Sadler. For instance, Mr. Brown alleges that Judge Reece knew about the conditions of the jail but did nothing. He further claims that Judge Reece refused to permit him to go forward pro se in various criminal proceedings because the judge believed Mr. Brown was using his pro se status to prosecute his civil suit against the county. Judge Reece also delayed these criminal proceedings by granting continuance after continuance over Mr. Brown's objections. In addition, Judge Reece denied him access to the courts by failing to file a civil complaint naming the judge as a defendant, refusing to allow Mr. Brown to present arguments at a hearing on a motion to quash and a motion for contempt or to submit

affidavits from witnesses who saw him being beaten at the jail, limiting his time in the law library to two hours per week, striking all his motions and refusing to accept any new ones, denying all of his discovery requests without stating a reason, instructing stand-by counsel not to help him prepare for trial, and denying him telephone calls and requiring that all witnesses and experts be contacted by mail. Mr. Brown also contends that Judge Reece accepted evidence behind closed doors and refused to put on the record certain evidence which the prosecuting attorney's civil lawyers had shown him in court. Allegations in the complaint directed solely against Judge Reece involve several videotapes made at the jail that allegedly show Mr. Brown being tortured. Mr. Brown alleges that Judge Reece would not give him copies of the tapes or put the tapes on the record. Mr. Brown further alleges that Judge Reece subsequently either stole certain of the videotapes out of evidence or destroyed them in order to protect the sheriff and the prosecutor from both criminal and civil liability.

II.

The defendants have moved for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants base the Fed.R.Civ.P. 12(b)(1) portion of their motion on the so-called Rooker-Feldman doctrine. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). This doctrine arises from the requirement that the final judgments of state courts are entitled to full faith and credit and may not be reviewed by federal courts except by the United States Supreme Court upon a writ of certiorari pursuant to 28 U.S.C. §1257. The doctrine "is confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments..." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284

(2005). This limitation means that Rooker-Feldman "applies [to deny federal jurisdiction] only when a plaintiff complains of injury from the judgment itself." Coles v. Granville, 448 F.3d 853, 858 (6th Cir. 2006).

In his response to defendants' argument, Mr. Brown explicitly states that he is not asking the Court in this case for any relief regarding his state criminal conviction. The defendants, however, contend that this fact is irrelevant to their Rooker-Feldman argument. They assert that this Court cannot exercise jurisdiction over Mr. Brown's constitutional claims against them because such claims are "inextricably intertwined" with the state court's proceedings, decisions, and judgments.

The Supreme Court in Exxon implicitly rejected the use of the phrase "inextricably intertwined" to extend Rooker-Feldman to situations other than the source of the alleged injury was not the state-court judgment. McCormick v. Braverman, 451 F.3d 382, 394-95 (6th Cir. 2006), cert. denied, 128 S.Ct. 41 (2007). Accordingly, the fact that Mr. Brown's constitutional claims consist of challenges to the judges' conduct while presiding over his criminal proceedings does not necessarily mean that his state-court judgment of conviction is the source of his injury. Mr. Brown specifically disclaims any injury resulting from his criminal conviction, but rather states that his injuries arose from the illegal acts of Judge Sadler and Judge Reece while his criminal case was pending. Therefore, the Rooker-Feldman doctrine is inapplicable. See Frost v. Boyle, No. 1:06-cv-2649, 2008 WL 650323 at *3-4(N.D. Ohio Mar. 5, 2008).

### III.

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheuer v. Rhodes,

4

416 U.S. 232, 236 (1974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). A complaint may not be dismissed under this rule if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).

A motion to dismiss under Rule 12(b)(6) is directed solely to the complaint itself. Roth Steel Products, 705 F.2d at 155. Consequently, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 416 U.S. at 236. A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. Roth Steel Products, 705 f.2d at 155. The Court will grant a defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) if the complaint is without merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See, generally, Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).

IV.

As a general rule, judges are entitled to absolute immunity from civil liability regardless of the consequences which follow from their judicial acts. "It is well-established that judges of courts of general jurisdiction are immune from liability for their judicial acts.... Except for acts in the 'clear absence' of jurisdiction, judicial immunity is absolute." Sparks v. Kentucky Character & Fitness Committee, 818 F.2d 541, 542 (6th Cir.1987), vacated, 484 U.S. 1022 (1988), aff'd on reconsideration, 859 F.2d 428 (6th Cir.1988), citing Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1871); Stump v. Sparkman, 435 U.S. 349 (1978); King v. Love, 766 F.2d 962 (6th Cir.), cert.

5

denied 474 U.S. 971 (1985).

Bradley stands for the proposition that, at common law, a judge enjoys absolute immunity from the consequences of judicial acts, premised upon the concern that if such immunity were not available, judges would constantly be the subject of lawsuits by unsuccessful or dissatisfied litigants, and that the risk of personal liability and the interference with a judicial function posed by the availability of such lawsuits would make it impossible either for judges to carry out their functions or to encourage persons to become judges in the first instance.  That common-law principle was extended to liability under 42 U.S.C. § 1983 by Pierson v. Ray, 386 U.S. 547 (1967).  As more completely explained in Stump v. Sparkman, supra, the immunity does not disappear even if the judicial act "was in error, was done maliciously, or was in excess of [the judge's] authority"; liability attaches only to acts taken in the "'clear absence of all jurisdiction.'"  Id. at 356-57, quoting Bradley v. Fisher, supra.

If a judge acts in some capacity other than a judicial capacity, judicial immunity does not apply.  Forrester v. White, 484 U.S. 219 (1988); see Crooks v. Maynard, 913 F.2d 699, 700 (9th Cir.1990)("Absolute judicial immunity only applies to judicial acts and not to administrative, legislative, and executive functions that a judge may perform").  It is not always clear which acts of a judge are "judicial" and which are not. The test is a functional one.  The court must consider the nature of the act, not the identity of the actor.  "Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one." Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir.1989).  However, if the act helps to determine the rights and liabilities of parties to a lawsuit, it may be a judicial act even if it does not fall into

6

the traditional category of deciding a case.

Once the court determines that an act is of a judicial nature – that is, one ordinarily performed by a judge – and the persons dealing with the judge reasonably understand his actions to have been so performed, unless there is unequivocal proof that the judge acted in the clear absence of all jurisdiction, he or she is absolutely immune from a suit for money damages brought under §1983. Claims for injunctive relief are also unavailing in a §1983 action against "a judicial officer for an act or omission taken in such officer's judicial capacity... unless a declaratory decree was violated or declaratory relief was unavailable." Massey v. Stosberg, 136 Fed. App'x 719, 720, 2005 WL 1432946 at *1 (6th Cir. Feb. 8, 2005)(quoting 42 U.S.C. §1983).

There is no question that the acts or omissions which Mr. Brown complains of were undertaken by Judge Sadler and Judge Reece in their judicial capacities. These include the seemingly inconsistent allegations that the judges refused to appoint him new counsel and/or interfered with his right to move forward pro se. Also their refusal to entertain Mr. Brown's motions, to put certain evidence on the record, to recuse themselves, to order discovery, to obtain witnesses on his behalf and evidence from third parties, to ensure his presence at all hearings, and to protect his speedy trial rights are quintessential judicial acts performed by them in their functions as judges presiding over his criminal proceedings. Mr. Brown confuses the nature of these acts and the authority by which they were rendered with the judges' underlying personal motivations. It simply is not relevant to the question of judicial immunity whether (as Mr. Brown alleges)Judge Sadler and Judge Reece sought to protect themselves and the county from liability. Even a "conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does

not pierce the immunity extended to judges and prosecutors." Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986). Similarly, the fact that Judge Sadler was on the board of Maryhaven or was a candidate for the Franklin County Court of Appeals is of no importance. No matter how these roles may have influenced her decisions concerning Mr. Brown's trial, she still made those decisions as a judge and not as a board member or political candidate. Judge Reece's withholding and/or destruction of certain videotapes evidencing Mr. Brown's torture at the Franklin County jail was likewise taken in his judicial capacity, and he is thus entitled to immunity. See Khanna v. State Bar of California, 505 F.Supp.2d 633, 645 (N.D. Cal. 2007)(judge's erasure of a recording of part of the state bar court proceedings was done in her judicial capacity); Freeze v. Griffith, 849 F.2d 172, 174-75 (5th Cir. 1988)(judge was absolutely immune from claim that he conspired with others to suppress exculpatory evidence).

Although Mr. Brown correctly notes that judicial immunity does not protect judges from criminal liability, see O'Shea v. Littleton, 414 U.S. 488, 503 (1974), he has no authority to initiate federal prosecution of Judges Sadler and Reece for their alleged unlawful acts. Violett v. Pearson, 149 F.3d 1185 (table), 1998 WL 381640 at *2 (6th Cir. Jun. 23, 1998). This is particularly so when the source of this supposed liability is state criminal law. Nor is this Court required to accept as true for purposes of Fed.R.Civ.P. 12(b)(6) Mr. Brown's wholly unsupported allegation that Ohio Rev. Code §§2921.44 and 2921.45 create a federally recognized liberty interest. See Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971)(court is required to accept as true only well-pleaded facts, and not legal conclusions).

Mr. Brown's allegations that Judges Sadler and Reece failed

8

to protect him from mistreatment at the Franklin County jail, while arguably falling outside the scope of judicial immunity, nevertheless fail to state a claim upon which relief may be granted. As this Court pointed out in its Report and Recommendation regarding the Franklin County Commissioners' motion to dismiss, it is the sheriff who is in charge of the county jail and all persons confined therein. See Ohio Rev. Code Ann. §341.01 (Baldwin 2008). The common pleas judges have no duty to control the sheriff in keeping the jail safe, and the failure of Mr. Brown to allege that Judge Sadler or Judge Reece directly participated in any alleged torture or actively encouraged it is fatal to this claim.

    For all of these reasons, the Court concludes that Judges Sadler and Reece are absolutely immune from Mr. Brown's claims for damages. Judge Frost previously determined that the plaintiff's claims for injunctive relief insofar as they relate to conditions at the Franklin County jail are moot since he is no longer incarcerated there. The only other applicable claim for injunctive relief seeks the return of certain videotapes by Judge Reece. The Court, however, has already found that the withholding and/or destruction of these tapes occurred in the scope of Judge Reece's judicial capacity. Mr. Brown has not alleged that Judge Reece's action violated a declaratory decree or that delaratory relief is not available. Therefore, his claim for injunctive relief is unavailing in a §1983 action. See Massey v. Stosberg, supra.  Because this Court is recommending that all of Mr. Brown's claims against Judge Sadler and Judge Reece be dismissed on grounds of judicial immunity, it is not necessary to address the defendants' arguments that his claims are subject to dismissal based on Heck v. Humphrey, 512 U.S. 477 (1994), or that the claims are barred by the applicable statutes of limitation.

V.

Based upon the foregoing, it is recommended that the motion to dismiss (doc. #33) be granted pursuant to Fed.R.Civ.P. 12(b)(6) and that all claims against defendants the Honorable Judge Lisa L. Sadler and the Honorable Judge Guy L. Reece be dismissed. The Court further orders that the defendants' motion for a protective order and a stay of discovery (doc. #44) is granted until the District Judge acts upon this Report and Recommendation.

PROCEDURE ON OBJECTIONS

If any party objects to the Report and Recommendation made with respect to Judge Sadler and Judge Reece, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge