UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STEVEN S. BROWN,**

       **Plaintiff,**

                                  Case No. 07-cv-13

v.                                 **JUDGE GREGORY L. FROST**
                                    Magistrate Judge Terence P. Kemp

**WARDEN VOORHIES, et al.,**

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Steven S. Brown's "Motion to Produce CD and Objections" (ECF No. 284), "Motion for Order of Protection" (ECF No. 293), and his combined "Response to Defendants' Objections to Producing Disc, Motion for Reconsideration on the Denial of the Rule 56(f)Motion [*sic*], Motion Telling Status of Plaintiff's Attempts to Respond to Summary Judgment and Request for More Time to Respond" (ECF No. 292). Also before the Court are Defendants' memoranda in opposition to Plaintiff's various motions (ECF Nos. 291 and 295), Plaintiff's "Addendum to Motions for Rule 56(f), Motion to Stay, Motion for Extension of Time to Respond to Summary Judgment and for an Order of Protection" (ECF No. 294), Plaintiff's "Response" to Defendants' opposition memoranda (ECF No. 298), Interested Party State of Ohio's Notice of Compliance with Court Order (ECF No. 296), and Plaintiff's Response to the State of Ohio's Notice (ECF No. 299).

Plaintiff's various Motions seek further delay in a case that has been pending since January 9, 2007. This Court has stated previously that it is not inclined to delay this already old case any longer. Plaintiff's Motions do not convince this Court that it should be inclined

otherwise. For the reasons below, Plaintiff's Motions are all **DENIED**.

### I. Background

Plaintiff is an inmate at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio. He filed this lawsuit in January 2007, alleging numerous civil rights violations arising (generally speaking) out of his treatment in the Franklin County jail.

Since this case was filed, Plaintiff has requested more than 20 extensions of various case deadlines. Since issuing its first scheduling order nearly three years ago (ECF No. 145), the Court has granted six extensions of the discovery deadline (ECF Nos. 145, 166, 177, 194, 229, 237, 253, 254) and has modified the dispositive motion deadline at least three times (ECF Nos. 166, 237, 253.) Pursuant to the latest dispositive motion deadline scheduled by the Court, Defendants timely filed their Motion for Summary Judgment on November 30, 2011. (ECF No. 275.) On Plaintiff's Motion, this Court extended the time for Plaintiff's response to the summary judgment motion, setting a deadline of January 16, 2012 for Plaintiff's opposition. (ECF No. 279.) Expressing concern that prison regulations may have prohibited the Court (and Plaintiff) from having access to relevant evidence in this case, this Court also ordered Defendants and non-party Ohio Department of Rehabilitation and Correction (ODRC) to file with the Court certain DVDs that were returned to the prison from Plaintiff's previous legal counsel and further prohibited the destruction of Plaintiff's legal documents pending disposition of this action (ECF No. 283.)

In accordance with the Court's Order, the ODRC provided the Court with 43 DVD/CD disks and five VHS videotapes. The Court distributed copies of these DVDs/CDs and videotapes to Plaintiff on January 18, 2012. (ECF No. 289.) In addition Plaintiff has acknowledged receipt

of "2 tubs of his legal papers" from the Warden on January 12, 2012 (albeit in disarray, according to Plaintiff). (ECF No. 288, at 1-2.) The Court extended to February 13, 2012, Plaintiff's deadline for responding to the Defendants' Motion for Summary Judgment. (ECF No. 290, at 4.)

Before the ODRC provided the disks and videotapes in compliance with this Court's Order, Plaintiff filed his "Motion to Produce CD and Objections." (ECF No. 284.) According to Plaintiff's Motion, there exists a CD "that has all [Plaintiff's] relevant legal papers on it." (*Id.* at 1.) Plaintiff claims that ODRC took all of his legal papers from him and that his only chance for supporting his opposition to the Defendants' Motion for Summary Judgment (ECF No. 275) is for Defendants to produce the CD, which contains "most of" the evidence he says he will need. (ECF No. 284, at 1.) Separately, Plaintiff asks this Court to defer considering the Defendants' Motion for Summary Judgment until Plaintiff has had time for additional discovery and/or additional time to prepare his opposition memorandum. (ECF No. 292, 294.) Plaintiff also asks this Court for an "Order of Protection," accusing ODRC of denying him access to his legal materials and denying him, through various means, the opportunity to prepare his opposition to summary judgment. (ECF No. 293.) Finally, Plaintiff asks the Court to appoint counsel a second time to represent him in this case. (ECF Nos. 284, 293.)

## II. Discussion

### A. Motion For Production of CD

In ECF No. 284, Plaintiff moves for production of a "CD that has all my relevant legal papers on it." (ECF No. 284, at 1.) Plaintiff contends that "most" of his evidence is on this CD and that he needs it to respond to the Defendants' Motion for Summary Judgment. (*Id.*)

3

Plaintiff's Motion is not well taken. As an initial matter, it is unclear whether Plaintiff's motion is moot. Plaintiff filed his "Motion to Produce CD and Objections" (ECF No. 284) on January 5, 2012, less than two weeks before this Court transmitted to Plaintiff the 43 CD/DVD disks and five VHS videotapes that were held by the ODRC. (*See* ECF No. 289.) In a document styled, in part, as his "Response" to the Defendants' opposition to his "Motion to Produce CD," Plaintiff does not speak to the issue of the CD. (*See* ECF No. 292.) Instead, the document is devoted entirely to his arguments to support his request for this Court to defer consideration of the Defendants' Motion for Summary Judgment and allow Plaintiff additional time to file his Opposition. (*See id.*) As Plaintiff did not press the issue of the "CD" further, it suggests to this Court that the issue of the CD was resolved by Plaintiff's receipt of the 43 CD/DVD disks sent to him by the Court in January.

Even if that is not the case, however, the Court is not inclined to grant Plaintiff the requested order. When examining Plaintiff's Motion, it is unclear whether such a "CD" exists. Plaintiff's only support for the contention that such a CD exists is the bare assertion in his "sworn statement" that one of Defendants' attorneys told Plaintiff's former attorney that one exists. (ECF No. 284, at 7, ¶ 12.) Given the hearsay nature of this statement, the Court has no evidence before it to conclude that such a CD exists. Any order to "produce" the CD may therefore be futile.

Plaintiff's Motion to Produce CD (ECF No. 284) is **DENIED**.

### B. Motion for Reconsideration of Fed. R. Civ. P. 56(d) Motion and/or Extension of Time to File Opposition to Summary Judgment.

On January 19, 2012, this Court denied Plaintiff's motion to "defer" ruling on Defendants' Motion for Summary Judgment under Fed. R. Civ. P. 56(d)(1). (ECF No. 290, at 2.)

Plaintiff invoked Rule 56(d)(1) to argue that the Defendants' purported failure to comply with this Court's Order to return his "legal papers" to him had hampered his ability to present facts essential to opposing summary judgment. (ECF No. 286, at 4.) This Court denied the motion, noting ODRC's apparent compliance with this Court's Order to provide certain materials to the Court and the Court's subsequent transmittal of those materials to Plaintiff. (ECF No. 290, at 3.) The Court granted Plaintiff, however, an extension of time in which to respond to the Defendants' summary-judgment motion, granting him until February 13, 2012, to oppose the Defendants' Motion for Summary Judgment. (*Id.* at 3.)

Plaintiff now renews his Rule 56(d) Motion, arguing that deferring ruling on the summary-judgment motion is appropriate for a variety of other reasons. Plaintiff spends a great deal of time providing a litany of accusations against ODRC and the Defendants, contending that their obstructionist behavior and "retaliation" have prevented him from having access to "law" and his legal materials. Plaintiff therefore contends that he has been thwarted in his ability to prepare an opposition to the Defendants' summary-judgment motion. In addition, Plaintiff claims not only the need for additional discovery to be conducted to support his opposition, but also contends that certain items have gone missing from his legal materials while they were in the custody of ODRC; in other words, he claims that materials he needs for opposing summary judgment have been lost.

### 1. *No Deferral for Additional Discovery.*

Plaintiff gives the Court a number of reasons why he cannot present facts essential to opposing the Defendants' Motion for Summary Judgment. In separate "sworn statements," Plaintiff indicates that additional discovery is necessary. (*See* ECF No. 292, at 7 ¶¶ 6, 8, 11;

ECF No. 298, at 16 ¶ 5.)

The affidavit required by the rule must "indicate to the district court [the party's] need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citing *Radich v. Goode*, 886 F.2d 1391, 1393-94 (3d Cir. 1989)). A motion under Rule 56(d) may be properly denied where the requesting party makes only general and conclusory statements regarding the need for more discovery. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (citing *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir. 1999)). The court may also deny a request for deferral under Rule 56(d) where the nonmoving party's affidavit lacks detail or specificity. *Id.* (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989)); *see also Cardinal v. Metrish*, 564 F.3d 794, 797-98 (6th Cir. 2009) ("If the plaintiff makes only general and conclusory statements in his affidavit regarding the needed discovery, lacks any details or specificity, it is not an abuse of discretion for the district court to deny the request.").

The Plaintiff's sworn statements do not convince this Court that deferring its decision on the Defendants' Motion for Summary Judgment is warranted. To the extent that Plaintiff seeks additional time for discovery because his former counsel "were not done with discovery" before they "withdrew," the Court is unimpressed with Plaintiff's contention. That Plaintiff would cast his previous counsel as the villain in this scenario is alarming, to say the least. Plaintiff had capable counsel appointed to represent him in this matter, despite the fact that civil litigants do not ordinarily have the right to counsel. *See Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (noting that appointment of counsel in a civil case is not a constitutional right, but a privilege justified only by "exceptional circumstances"). This Court had little choice, however,

but to grant counsel permission to withdraw from the case after Plaintiff, for all intents and purposes, fired them. For Plaintiff to now use their necessary withdrawal as a reason to defer consideration of the Defendants' summary-judgment motion is disingenuous.

To the extent that Plaintiff is specific about what additional discovery he needs to complete, the Court is not persuaded. Plaintiff argues that there are "new issues" for which he needs discovery, namely, the issue of whether an assistant prosecuting attorney in the civil division of the Franklin County Prosecutor's Office was present or participated in Plaintiff's criminal case. (ECF No. 298, at 16 ¶ 5.) But Plaintiff has not explained how these issues are "new." Plaintiff's Complaint in this case is replete with references to the prosecutors from the civil division participating in his criminal proceedings. The Court is therefore puzzled as to how Plaintiff could claim surprise that the Defendants would deny the allegation. If any discovery was to be done into this and other "new" issues identified by Plaintiff, Plaintiff should have done them during the nearly five years this case was pending before Defendants filed their Motion for Summary Judgment.

### 2. *Plaintiff's Claim of "Missing" Evidence*

Plaintiff also argues that the Court should stay proceedings on Defendants' Motion for Summary Judgment or, alternatively, extend Plaintiff's deadline for responding to the Defendants' Motion, because he claims to be missing certain evidence that is necessary to prepare his opposition memorandum. In his "Sworn Statement" attached to his original motion for additional time to respond to the summary-judgment motion, Plaintiff claims to be "missing transcripts of hearings, medical records from when I first came to the jail, DVD's of me being tortured, depositions, [and] interrogatories." (ECF No. 292, at 7 ¶ 6.) Plaintiff also referred to

"all the notes he had previously made on the DVD's" being missing. Plaintiff did not explain the importance of these items in the context of the actual arguments made in the Defendants' Motion for Summary Judgment or how these items are needed to rebut those arguments.

In an "Addendum" to his request for additional time to respond to the Defendants's summary-judgment motion, served three days before his opposition deadline, Plaintiff had a chance to elaborate on the importance of these "missing" items. (*See* ECF No. 294.) Though he did not address the issue of missing evidence in his "Sworn Statement" accompanying the "Addendum" (*see id.* at 6), Plaintiff alluded in the body of the Addendum to the same "missing" items he had referenced in his previous motion for additional time (*viz.*, DVDs, his own notes, hearing transcripts). (*Id.* at 2-3.) Plaintiff also noted that he was "missing" affidavits from unspecified inmates about jail conditions and a certain DVD he allegedly obtained from the Franklin County Commissioners, "showing the results of a study they did on the jail conditions." (*Id.*) Again, however, Plaintiff does not explain how these items are relevant to the issues raised in the Defendants' Motion for Summary Judgment or why he is unable to prepare an opposition without these items.

Plaintiff also makes reference to these "missing" items in two other filings he made after his opposition to summary judgment was due. (*See* ECF Nos. 298, 299.) While Plaintiff continued to complain about these "missing" materials, he again failed to elaborate on the importance of this supposed evidence as they related to the issues actually raised in the Defendants' Motion for Summary Judgment. As Defendants filed their Motion on November 30, 2011, Plaintiff has had ample opportunity to explain what evidence is needed to respond to the concrete arguments raised in that Motion. This Court is not inclined to further delay a very

8

old case based upon conclusory assertions about what "missing" evidence Plaintiff possibly needs to oppose Defendants' arguments.

Since this Court last extended Plaintiff's deadline for responding to the Defendants' Motion for Summary Judgment (ECF No. 290), Plaintiff has adorned the Court's docket with four filings in which he steadfastly trumpets his need for more time to respond to the Defendants' Motion in light of the evidence he is "missing" through (according to Plaintiff) the fault of the ODRC. (ECF Nos. 292, 294, 298, 299.) Absent some explanation of why these allegedly "missing" materials are necessary to address the issues actually raised in the Defendants' Motion, Plaintiff's request for additional time appears simply to be a delay tactic. When viewed in conjunction with Plaintiff's Motion for an "Order of Protection" (ECF No. 293, addressed *infra*), Plaintiff's request for (yet another) extension of time of unspecified duration smacks of an attempt to obtain special accommodations for an indeterminate period of time, under the guise of protecting Plaintiff's "access to the Court." The Court will not be used as Plaintiff's tool to obtain prison privileges that are not afforded to other inmates.

Accordingly, Plaintiff's motion to defer ruling on Defendant's Motion for Summary Judgment or for an extension of time to respond to the Defendant's Motion (ECF No. 292) is **DENIED**.

### C. Motion for "Order of Protection"

Plaintiff has also moved this Court for something he calls an "order of protection, staying summary judgment and giving specific orders to ODRC to allow plaintiff to access the courts, his legal papers, a typewriter, copies, and a way to watch the DVD's." (ECF No. 293, at 2.) In addition to the "missing" evidence discussed above, Plaintiff contends that ODRC has not given

him ample opportunity to "access the courts" by committing such acts as destroying his typewriter, limiting his time on law library computers, failing to provide sufficiently operational computers for "access to law," limiting the amount of legal materials he can have in his prison cell, and "taking away" his legal materials.  The Court rejects Plaintiff's arguments, as Plaintiff has not convinced this Court that there has been an illegal denial of access.

As to Plaintiff's claim that ODRC has destroyed his typewriter, the Court is not persuaded by this argument.  In addition to being self-serving, this accusation lacks an indication that Plaintiff has personal knowledge of this supposed fact.  The Court therefore does not have competent evidence before it that ODRC has destroyed Plaintiff's typewriter to thwart his effort to oppose summary judgment in a case in which ODRC is not even a party.  Moreover, as Plaintiff's filings demonstrate, the absence of a typewriter does not appear to have affected his ability to file documents in this case.  (*See e.g.* ECF Nos. 294, 298, 299.)

As to Plaintiff's other arguments that his right of access to the Court has been denied, the Court does not find them persuasive.  The right of access to the courts "requires that prisoners be provided with the tools to challenge their sentences or the conditions of their confinement." *Britford v. Collins*, No. 2:07-cv-306, 2010 U.S. Dist. LEXIS 29982, at *6 (S.D. Ohio March 29, 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 355, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)).  "Such tools include the means to 'adequately prepare and file the necessary legal documents.' " *Id.* "However, the right of prisoners to prepare legal documents is not unrestricted." *Id.* " 'Restrictions on the time, place, and manner in which inmates may engage in legal research and preparation of legal papers are constitutional' so long as the restrictions do not unreasonably frustrate the right of access to the courts." *Eberle v. Wilkinson*, No. 2:03-cv-272, 2005 U.S. Dist.

LEXIS 46296, at *6-7 (S.D. Ohio Aug. 17, 2005) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)).

Despite Plaintiff's self-serving accusations that ODRC have deliberately prevented him from having access to legal materials or to research "law" in support of his case, Plaintiff's own evidence cuts against his claims. It appears from the record that Plaintiff was granted *special* accommodations that are not ordinarily afforded other prisoners. For example, Plaintiff was allowed more than 20 hours of computer time between January 23, 2012, and February 3, 2012. (ECF No. 296-1, Ex. 2.) And for a period of time, Plaintiff was also allowed to have two 2.4 cubic-foot tubs of legal material in his cell, which is more than other inmates are allowed to have. While certain of these special accommodations were discontinued at some point, Plaintiff's evidence fails to indicate that the prison was denying him access to his legal materials. Plaintiff was to be allowed materials in accordance with ODRC policy — in other words, he was to be subject to the same policies as any other inmate at SOCF. (ECF No. 293, at 4; ECF No. 296-1, at ¶ 5.) Just because Plaintiff might be entitled to access his legal materials does not mean that he has a right to access them on his terms and at his convenience. As a prisoner, Plaintiff is subject to the policies and regulations of the ODRC, which limit the amount of material that Plaintiff may have in his cell.[1] The Court is not convinced that the ODRC regulations, as applied to Plaintiff, have *unreasonably* frustrated Plaintiff's access to the Court.

Plaintiff goes to great lengths to explain how the access to his legal materials and the

---

[1] Notably, this Court has already preserved Plaintiff's access to the Court in one sense: this Court previously ordered the prison to hold in abeyance any regulation that may have required destruction of Plaintiff's legal materials prior to the disposition of this action. (*See* ECF No. 283.)

11

time he is given to work on his case is insufficient. But the volume of filings that Plaintiff has been able to bombard this Court since his counsel withdrew belie that claim. Plaintiff has filed no fewer than 13 documents with this Court since November 30, 2011, the date that Defendants filed their Motion for Summary Judgment. (ECF Nos. 278, 280, 281, 282, 284, 286, 287, 288, 292, 293, 294, 298, 299.) The sheer number of filings that Plaintiff has been able to muster belies his claim that access to the Court has been thwarted.

Nor is the Court convinced that Plaintiff has been denied access to "law." Plaintiff makes much of the fact that the SOCF recently terminated Westlaw® electronic legal research access and replaced it with Lexis® access. It appears from the evidence, however, that Westlaw® was terminated on the afternoon of January 31, 2012, and replaced with Lexis® on the morning of February 1, 2012 — the very next day. (ECF No. 296-1, at ¶ 6.) Plaintiff complains, however, that Lexis® "does not work right." (ECF No. 294, at 2.) In support of this contention, Plaintiff points to a deputy warden's response to Plaintiff's internal complaint, in which the deputy warden wrote: "We are aware of the computer issues. A new system has been installed and Operation Support Center / Legal Services are currently working to debug the system." (ECF No. 294-3.)

The Court does not view the Lexis® issue to show a lack of access to "law." For one thing, the Court has some doubt about the veracity of Plaintiff's claims. The so-called evidence that Lexis® was not working correctly does not even support Plaintiff's claim. The deputy warden's response cited by Plaintiff does not deal with the issue of Lexis® access; rather, it addresses computer issues related to the word processing program and Plaintiff's ability to open and save files. (*See* ECF No. 294-3.) For another thing, Plaintiff's complaints about Lexis®

lose their force when considering the facts that (1) the Defendants' Motion for Summary Judgment was filed *on November 30, 2011* and (2) Plaintiff had more than 13 hours of documented law library computer access in the month of January, *before* the changeover from Westlaw®. (*See* ECF No. 296-1.) Under the facts presented, the Court is simply unable to conclude that Plaintiff has been denied "access to law."

Moreover, the Court is cognizant of the fact that much of the harm of which Plaintiff complains is self-inflicted. Plaintiff had competent counsel appointed to assist him with this case. His prior appointed counsel had the ability to not only provide coherent legal arguments on Plaintiff's behalf, but also the means to wade through the volume of materials (*e.g.*, documents, videotapes, and DVDs) that Plaintiff now claims he does not have adequate time to review to prepare his opposition to Defendants' summary-judgment motion. Instead of utilizing the services of his appointed counsel — the assistance of whom he had no right to in the first place — Plaintiff looked the proverbial gift horse in the mouth and chose to fire them for reasons that are highly questionable, to say the least. The Court is not inclined to grant an extension of time to the Plaintiff when he could have easily avoided the circumstances he now complains of.

For these reasons, Plaintiff's Motion for an Order of Protection (ECF No. 293) is **DENIED**.

### D. Motion to Appoint Counsel

Plaintiff also asks this Court to appoint him counsel. (ECF No. 284, at 5; ECF No. 293, at 3.) Plaintiff has already had counsel appointed for him once (ECF No. 234), despite the fact that he is not entitled to appointed counsel in a civil case. Despite being granted the privilege of capable appointed counsel, Plaintiff fired that counsel.

The Court had already denied Plaintiff's request for additional appointed counsel on the basis that it would unduly delay the adjudication of this case (*see* ECF No. 262), which has now been pending for more than five years.  The Court is not inclined to delay this case to appoint counsel — to which Plaintiff is not even entitled in the first place — when Plaintiff has already fired one team of capable lawyers for (as far as this Court can tell) highly questionable reasons. Plaintiff's request for appointed counsel is **DENIED**.

### III.  Conclusion

Plaintiff filed this case on January 9, 2007.  In the five-plus years since this case was filed, Plaintiff has been numerous extensions of deadlines, including six extensions of the discovery deadline.  This Court has already indicated it is "simply not inclined to permit any further delay in this very, very old case." (ECF No. 262.)  Plaintiff has provided the Court with no persuasive reasons why it should be inclined to change its mind and allow further delay to an even older case.  Plaintiff's pending Motions (ECF Nos. 284, 292, and 293) are **DENIED**.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost  
**GREGORY L. FROST**  
**UNITED STATES DISTRICT JUDGE**