UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN S. BROWN,

        Plaintiff,

                                Case No. 07-cv-13

v.                               JUDGE GREGORY L. FROST
                                Magistrate Judge Terence P. Kemp

WARDEN VOORHIES, et al.,

        Defendants.

### OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Mark Barrett, Terasa Shaver, Ron O'Brien, Marla Farbacher, Mary Jane Martin, Robert Krapenc, and the late Sheriff Jim Karnes.  (ECF No. 275.)  Despite numerous extensions of the case schedule and two extensions of time to respond to the Defendants' Motion for Summary Judgment, Plaintiff Steven S. Brown has not filed an opposition to the Motion.  For the reasons set forth below, the Defendants' Motion for Summary Judgment is **GRANTED.**

### I.  Background

Plaintiff is an inmate at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio.  He was convicted in Franklin County, Ohio in 2001 for aggravated murder and aggravated robbery.  *See State v. Brown*, 10th Dist. No. 01AP-587, 2002-Ohio-2802.  After the state court of appeals reversed his conviction, Plaintiff pleaded guilty to a lesser-included offense of involuntary manslaughter and to aggravated robbery.  *See State v. Brown*, 10th Dist. No. 05AP-375, 2006-Ohio-385.  As part of the plea agreement, the State filed a *nolle prosequi* on multiple indictments charging Plaintiff with criminal offenses committed while he was detained in the

1

Franklin County jail.  (Farbacher Aff., ECF No. 275-2, at ¶¶ 10-11.)

Plaintiff filed this lawsuit in January 2007, alleging numerous civil rights violations arising out of his treatment in the Franklin County Corrections Center ("FCCC") during separate stints of incarceration from March 2000 to April 2001 and from January 2003 to March 2005. Generally speaking, Plaintiff's voluminous Complaint alleges violations of his constitutional rights in connection with the conditions of his confinement, the alleged denial of his access to the courts, the inadequacy or denial of medical care, and the alleged "retaliation" against him for his filing grievances about his treatment at the jail.  (*See generally* Compl., ECF No. 4.)  Though Plaintiff originally named 57 Defendants in his Complaint (including various John Does, two Ohio Court of Common Pleas judges, three Ohio Court of Appeals judges, and the late Ohio Supreme Court Chief Justice Thomas Moyer), the Motion for Summary Judgment now before the Court is brought on behalf of the only seven defendants who have been served with process and who remain in the case.[1]

Four of the Defendants are attorneys in the Franklin County Prosecutor's Office: Defendant O'Brien is the duly elected Franklin County Prosecuting Attorney and Defendants Farbacher, Martin, and Krapenc are (or were during the relevant period of time) duly appointed Assistant Prosecuting Attorneys.  The factual allegations against the prosecutors include their

---

[1]All six of the Ohio judge defendants were dismissed from the case, as were the Franklin County Commissioners. (ECF Nos. 21, 101, 102.)  Warden Voorhies and 17 other Defendants were also dismissed; claims against these defendants, arising out of alleged conditions and events at the Lebanon (OH) Correctional Institution and the Southern Ohio Correctional Facility, were severed and transferred to the Western Division of this Court at Cincinnati.  (ECF No. 6.) Including persons or entities named as John Doe defendants, this Court's docket indicates that 25 defendants have not been served with process more than five years after Plaintiff filed the Complaint in this case.

2

failure to take action when Plaintiff complained to them about the constant abuse and horrible conditions he was forced to endure at the Franklin County jail.  Plaintiff also claims that he asked O'Brien to prosecute those at the jail responsible for the alleged torture and other violations of his constitutional rights, but that O'Brien failed to respond.  In addition, the Complaint states that Prosecutor O'Brien permitted his assistants in the civil division (most notably Martin) to participate in all facets of Plaintiff criminal prosecution and denied Plaintiff discovery in his criminal case to prevent the use of any discoverable evidence in his civil rights action.  These civil lawyers also allegedly altered videotapes in order to prove that Plaintiff was disruptive at the jail. When Plaintiff filed a motion for contempt in common pleas court, prosecutors under O'Brien's supervision (the Complaint does not allege which ones) allegedly had deputies question him surreptitiously about his hearing strategy and later played a videotape of this interview in open court over his objection.  These prosecutors also purportedly arranged for more than thirty deputies to appear at the contempt hearing in an effort to intimidate the judge.  One assistant prosecutor is alleged to have instituted a criminal charge against Plaintiff for possessing a shank in order to force him under "duress" into a plea to the murder indictment (albeit a guilty plea to the lesser-included offense of involuntary manslaughter). Throughout the criminal proceedings, according to Plaintiff, prosecutors falsely denied that the alleged abuse was taking place at the jail despite videotape evidence to the contrary.  Later, in conjunction with other defendants, they allegedly either stole the videotapes out of evidence or destroyed them.

The allegations against the late Sheriff Karnes and Chief Deputy Barrett generally fall into

one of two categories.[2]  The first group comprises complaints concerning the overall conditions at the Franklin County jail that allegedly fell below the state minimum jail standards, as well as what is required under the United States Constitution.  Examples include overcrowding, inadequate healthcare, unsanitary conditions, poor dietary standards, inadequate handicap facilities, high suicide rate, poor personal hygiene, broken plumbing, excessive use of force, retaliation, lack of access to courts and to a law library, and other allegedly inhumane conditions. Plaintiff claims that Sheriff Karnes was deliberately indifferent to these alleged serious deficiencies.

The second set of allegations consists of various instances of maltreatment of Plaintiff while he was a pretrial detainee at the FCCC. Plaintiff alleges that he frequently suffered torture at the hands of his jailers who used pepper spray on several occasions which they applied to sensitive areas of his body such as the eyes and genitals. The deputies there allegedly often left him in isolation and denied him food and medications and access to medical care. They also allegedly interfered with his access to the law library, lawyers, witnesses, and experts. They allegedly retaliated against him for filing his federal lawsuit and destroyed his legal papers along with his dentures, hearing aid and reading glasses. In one instance, Plaintiff claims that a deputy at the jail urinated on his legal papers.  The deputies, according to Plaintiff, also initiated what he characterizes as false criminal charges against him which were later dropped.[3]  Whenever

_____

[2]Sheriff Karnes passed away on June 2, 2011.  (*See* ECF No. 271.)  The effect of his death upon Plaintiff's claims in this action is discussed *infra*.

[3]It appears that these charges were dropped as part of the plea agreement in which Plaintiff pleaded guilty to involuntary manslaughter and aggravated robbery.  (Farbacher Aff., ECF No. 275-2, at ¶¶ 10-11.)  The guilty plea avoided a retrial on the aggravated murder charge for which Plaintiff was originally indicted.

Plaintiff attempted to utilize the grievance system, the deputies would allegedly tear up his grievances. Plaintiff contends that he was under so much duress at the jail as the result of these alleged actions that he attempted suicide and was eventually forced to plead guilty in order escape the conditions at FCCC.

Plaintiff also alleges a claim against Terasa Shaver, a mental health professional employed at the FCCC.  Plaintiff alleges that Shaver denied him mental health services, falsely said Plaintiff was suicidal at the prompting of the Sheriff and the Prosecutors, and that she had him put naked in a suicide cell.

Plaintiff filed a federal lawsuit in 2003, challenging many of the same events referenced in the complaint in this action.  *Brown v. Karnes*, No. 2:03-cv-384 (S.D. Ohio filed Apr. 29, 2003). Named as defendants in that lawsuit, among others, were Sheriff Karnes, Barrett, and Shaver. The Franklin County Prosecutor defendants in this case (O'Brien, Farbacher, Krapenc, and Martin) were not defendants in the 2003 lawsuit.  The Court dismissed the 2003 lawsuit without prejudice for Plaintiff's failure to exhaust the grievance procedures within the correctional facility.  *Brown v. Karnes*, No. 2:03-cv-384, slip op. (S.D. Ohio July 27, 2005) ("*Brown I*"). Purporting to have exhausted his available grievance remedies contemplated in *Brown I*, Plaintiff filed this lawsuit on January 9, 2007.

## II.  Discussion

This case presents the atypical situation in which a motion for summary judgment is unopposed: though Defendants' Motion was filed four months ago and Plaintiff was given two extensions of time in which to respond to it (extending the deadline by a combined 48 days), Plaintiff did not file an opposition.  Although the Court may generally grant unopposed motions,

see Local Rule 7.2(a)(2), it is not empowered to do so where a motion for summary judgment is unopposed. Fed. R. Civ. P. 56 still requires a court to determine that the moving party has demonstrated the absence of a disputed question of material fact and a right to relief as a matter of law. *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005).

That is not to say, however, that the Court must do the work of the nonresponding, nonmoving party. "[W]here the nonmoving party fails to respond to the motion for summary judgment, the trial court is under no obligation to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *In re St. Clair Clinic, Inc*., No. 94-3943, 1996 U.S. App. LEXIS 1416, at *2 (6th Cir. Jan. 8, 1996) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Instead, the Court may rely upon the facts presented and designated by the moving party. *Id*. (quoting *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)).[4] If those facts establish the moving party's entitlement to judgment as a matter of law, the Court may properly grant summary judgment. *See* Fed. R. Civ. P. 56(e)(3).

---

[4]Defendants have submitted summary-judgment evidence in the form of duly executed affidavits, which this Court has considered in rendering this Opinion and Order. The Court has, however, disregarded the transcript of the Deposition of Plaintiff Steven S. Brown, a copy of which purports to be attached as Exhibit H to the Defendants' Motion For Summary Judgment. (*See* ECF No. 275-8.) The deposition transcript is not proper summary judgment evidence because it is not certified by the court reporter. (*Id.* at 129 (containing blank certification).) An unsigned certification means that the filed transcript does not qualify as proper summary judgment evidence. *See* Fed. R. Civ. P. 30(f)(1); *see also Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp. 2d 818, 823 n.3 (S.D. Ohio 2010); *Koch v. County of Franklin, Ohio*, No. 2:08-cv-1127, 2010 U.S. Dist. LEXIS 57367, 2010 WL 2386352, at *7 (S.D. Ohio June 10, 2010); *Weimer v. Honda of Am. Mfg., Inc*., No. 2:06-cv-844, 2008 U.S. Dist. LEXIS 51548, 2008 WL 2557252, at *1 (S.D. Ohio June 12, 2008); *Ullman v. Auto-Owners Mut. Ins. Co.*, 502 F. Supp. 2d 737, 744-45 (S.D. Ohio 2007); *Hinkle v. Norfolk S. Ry. Co.*, No. 2:05-cv-574, 2006 U.S. Dist. LEXIS 92515, 2006 WL 3783521, at *6 n.10 (S.D. Ohio Dec. 21, 2006).

### A.    Claims Against the late Sheriff Karnes

As to the late Sheriff Karnes, this Court previously dismissed various claim against him, leaving only Plaintiff's claims under the ADA and 42 U.S.C. §§ 1981, 1983, and 1985 remaining against him.  (Order, ECF No. 100.)  Before proceeding to the merits of the Defendants' Motion for Summary Judgment, the Court deems it necessary to address the effect upon this case of Sheriff Karnes' passing during the pendency of this case.

Counsel for Karnes' estate filed a notice of the Sheriff's June 2, 2011 death on November 23, 2011.  (ECF No. 271.)  Fed. R. Civ. P. 25(a)(1) speaks directly to the death of a party in pending litigation:

> *Substitution if the Claim Is Not Extinguished*. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Even assuming that the claims against the late Sheriff Karnes individually were not extinguished upon his death, his estate has not been substituted as a party.  Neither Karnes' representative nor any of the parties has moved for substitution to date.  Under Fed. R. Civ. P. 25(a), however, such a motion needed to be filed, if at all, by February 21, 2012.  The Court accordingly dismisses with prejudice all claims against the late Sheriff Karnes in his individual capacity.  *See e.g. Ward v. Burkhart*, No. 07-340, 2008 U.S. Dist. LEXIS 64720 (E.D. Okla. Aug. 21, 2008); *Buchanan v. Conner*, No. 05-3050, 2005 U.S. Dist. LEXIS 29237, at *5 (D. Kan. Nov. 22, 2005); *see also Sturdivant v. Board of Cty. Comm'rs of Geary Cty.*, No. 88-2465, 1990 U.S. Dist. LEXIS 7296 (D. Kan. May 16, 1990) (dismissing action *sua sponte* under Fed. R. Civ. P. 25(a)).

Sheriff Karnes' death does *not* extinguish the claims asserted against him in his *official* capacity. *See* Fed. R. Civ. P. 25(d). Karnes' successor as Franklin County Sheriff, Zach Scott, is substituted by operation of law as the defendant for the claims previously brought against the late Sheriff Karnes in his official capacity. *Id.*

### B.      Statute of Limitations as a Bar to §§ 1983 and 1985 Claims.

Defendants first argument urges summary judgment on statute-of-limitation grounds. (ECF No. 275, at 3.) Defendants do not specify which causes of action are time barred, but the Court gleans from the argument (and the earlier Motion to Dismiss of Defendants Karnes and O'Brien) that Defendants move to dismiss the claims brought under 42 U.S.C. §§ 1983 and 1985 based on the two-year statute of limitation. (*Id.* at 5; Mot. to Dismiss, ECF No. 53, at 5.)[5] The Court denied O'Brien's and Karnes' previous Motion to Dismiss on statute-of-limitation grounds, adopting the Magistrate's rationale that the untimeliness of Plaintiff's claims was not "apparent on the face of the Complaint." (Report and Recommendation, ECF No. 90, at 9.)

Defendants argue that suit upon any act committed prior to January 9, 2005 is time barred. But the Court does not necessarily agree with the Defendants' position, in light of the earlier dismissal of *Brown I*. The Court dismissed *Brown I* without prejudice due to Plaintiff's failure to exhaust available administrative remedies within the institutions in which he was incarcerated. *See Brown I*, slip op., at 2-3; *see also* 42 U.S.C. § 1997e(a). True to the Court's directive, Plaintiff's Complaint alleges (and attaches documentation of) his attempt to exhaust

---

[5]The statute of limitations applicable to actions under §§ 1983 and 1985 is the same as the statute of limitations applicable to personal injury actions under the law of the state in which the claims arose. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir.2007) (citing *Kuhnle Bros. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir.1997)). Ohio's statute of limitations for such actions is two years. Ohio Rev.Code § 2305.10.

administrative remedies under the procedures available to him.  And when a prisoner plaintiff

seeks to exhaust his administrative remedies under 42 U.S.C. § 1997e(a), the applicable statute of

limitation is tolled.  *Walters v. Evans*, 105 F. App'x 827, 829 (6th Cir. 2004).

Because of the tolling issue, this Court cannot say that Defendants have shown an

entitlement to summary judgment on statute-of-limitations grounds.  Plaintiffs' Complaint shows

(arguably) documentation of his attempts to exhaust administrative remedies within the two year

period of his filing the Complaint in this case.  Thus, the Defendants have not definitively

established that Plaintiffs' claims premised on his treatment at FCCC are time barred.

### C.    Prosecutor Defendants' Motion for Summary Judgment

The Prosecutor Defendants (O'Brien, Martin, Farbacher, and Krapenc) move for summary

judgment on a multitude of grounds.  Before proceeding to the merits of the Prosecutor

Defendants' arguments, the Court makes clear which claims are pending against these

Defendants.

Before Martin, Farbacher, and Krapenc appeared for the first time in this action,

Prosecutor O'Brien moved to dismiss the Plaintiff's Complaint against him for failure to state a

claim upon which relief could be granted.  (ECF No. 53.)  Adopting the Magistrate's Report and

Recommendation, this Court granted O'Brien's motion as to claims alleged under 42 U.S.C. §

1987, the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000c *et seq.*), the

Americans With Disabilities Act (42 U.S.C. § 12131 *et seq.*), and Title 29 of the Ohio Revised

Code.  (ECF Nos. 90, 100.)  This Court ruled that the causes of action alleged under 42 U.S.C. §§

1981, 1983, and 1985 remained against O'Brien.  (ECF No. 100.)

For the same reasons set forth in the Magistrate's Recommendation (ECF No. 90) and this

Court's Order adopting it (ECF No. 100), the Court deems the claims against Martin, Farbacher, and Krapenc to be similarly limited.  That is, the only claims pending against these Prosecutor Defendants are the ones alleged under 42 U.S.C. §§ 1981, 1983, and 1985.  It is with this understanding that the Court proceeds to analyze the Prosecutor Defendants' Motion for Summary Judgment.

Plaintiff's claims on the merits, such as they are, are precluded by the doctrine of prosecutorial immunity.  A prosecutor is entitled to absolute prosecutorial immunity from damages in an action under 42 U.S.C. §§ 1981, 1983, and 1985 for acts or omissions associated with the judicial process.  *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (§ 1983); *Howell v. Sanders*, 688 F.3d 344, 349 (6th Cir. 2012) (§ 1983); *Hancock v. Washtenaw Cty. Prosecutor's Ofc.,* 548 F. Supp. 1255, 1256 (E.D. Mich. 1982) (§§ 1981 and 1983); *Smart v. Jones*, 530 F.2d 64, 65 (5th Cir. 1976) (§ 1985).  Though a prosecutor is not absolutely immune from non-prosecutorial functions, such as giving legal advice or investigating, "the Supreme Court employs a 'functional approach' to determine when a prosecutor is acting within the scope of his duties as a prosecutor and when he is merely giving legal advice or investigating."  *Howell* at 349 (citing *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991) and *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993)).  The "critical inquiry" in a prosecutorial immunity analysis is 'how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process."  *Id.* at 350 (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997)) (internal quotations omitted).

The summary-judgment evidence submitted by the prosecutor Defendants establishes the

applicability of prosecutorial immunity.  As to Assistant Prosecutor Farbacher, she denies taking part in any "conspiracy" against Plaintiff, denies witnessing any "mistreatment" of Plaintiff at FCCC, and denies any role in the review of certain video tapes that Plaintiff alleges in his Complaint to contain evidence of mistreatment against him.  (Farbacher Aff., ECF No. 275-2, at ¶¶ 13-16.)  Equally important, Farbacher testifies that all actions she took with regard to Plaintiff were directly related to her prosecution of the criminal case against him.  (*Id.* at ¶ 12.)

Krapenc, who worked with Farbacher on Plaintiff's criminal case, likewise testifies in his affidavit to nothing other than legitimate prosecutorial activities.  Krapenc admits having viewed the video tapes referenced by Plaintiff, but states in his affidavit that the tapes did not show Plaintiff was abused in any manner by jail personnel.  (Krapenc Aff., ECF No. 275-3, at ¶ 9.)  Though he does not recall specifically informing the trial court of his opinion regarding the video tapes, Krapenc acknowledged that, if he had, he would have informed the court that there was no abuse of Plaintiff.  (*Id.* at ¶ 10.)  Equally important for purposes of the issue before the Court, Krapenc watched and reported on the video tapes — and undertook all other actions with regard to Plaintiff — in connection with his prosecution of the criminal case against Plaintiff.  (*Id.* at ¶ 7.)  *See Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (noting that absolute prosecutorial immunity applies to a prosecutor's evaluation and presentation of evidence before the court). Accordingly, Krapenc's Affidavit establishes that his actions fall squarely within the *Imbler* prosecutorial immunity.

Prosecutorial immunity also applies as a bar to any claims against Martin.  Even though Martin acted as the defense attorney for various Franklin County defendants in *Brown I* (*i.e.*, Plaintiff's 2003 civil lawsuit), that role as a *civil* litigator does not preclude application of the

11

immunity doctrine here.  Since *Imbler*, courts (including the Sixth Circuit) have extended the doctrine to "conduct in civil proceedings where a government attorney is operating in an enforcement role in . . . 'undertak[ing] the defense of a civil suit.'" *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (quoting  *Al-Bari v. Winn*, No. 89-5150, 1990 U.S. App. LEXIS 11539, 1990 WL 94229, at *1 (6th Cir. July 9, 1990)).  As set forth in her affidavit, all of Martin's actions relate to the defense of Plaintiff's civil suit against Sheriff Karnes and other county defendants.  (Martin Aff., ECF No. 275-4, at ¶¶ 4-12.)

The Court also finds that summary judgment on prosecutorial immunity grounds is appropriate as to Prosecutor O'Brien.  Plaintiff alleges in conclusory fashion that O'Brien violated his rights by (1) somehow participating or interfering in the criminal case against Plaintiff, (2) not responding to letters, (3) conspiring with other defendants to prevent Plaintiff from *pro se*, as was Plaintiff's desire, (4) denying Plaintiff's lawyer access to Plaintiff at the FCCC, and (5) generally acting outside of his "legal capacities" as Prosecutor.  (*See* Compl., ¶¶ 57, 71, 89, 98, 238, 363, 366, 384.)  Plaintiff's allegations against O'Brien are more bark than bite.  The affidavits submitted in support of summary judgment expressly deny that there has been any conspiracy, denial of lawyer access, or denial of access to the courts.  What are left against O'Brien are conclusory allegations that do not form the basis of a claim that can escape absolute prosecutorial immunity.

The Prosecutor Defendants' Motion for Summary Judgment on grounds of prosecutorial immunity is granted.

**B.      42 U.S.C. § 1983**

Plaintiff's Complaint alleges violations of his rights under the First, Fourth, Sixth, Eighth,

and Fourteenth Amendments to the United States Constitution, claims that are cognizable (if at all) under 42 U.S.C. § 1983.  *See Aarti Hospitality, LLC v. City of Grove City*, 350 F. App'x 1, 11 n.8 (6th Cir. 2009).  None of the Plaintiff's § 1983 claims survives summary judgment, regardless of whether the claims are against Defendants in their official or individual capacities.

### 1.    *Official Capacity Suits*

To establish a valid claim under § 1983, Plaintiff must prove that a person acting under color of state law subjected him (or caused him to be subjected) to the deprivation of a right secured by the Constitution or laws of the United States.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978).  Suits against government officials in their *official* capacities are treated as suits against the government entity itself.   As such, to establish liability against any of the Defendants in his or her *official* capacity, Plaintiff must show that the constitutional injury occurred as a result of execution of a government entity's policy or custom.  *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A plaintiff asserting a Section 1983 claim on the basis of a local government policy or custom must "identify the policy, connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy."  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1994).

Plaintiff's official-capacity claims fail to overcome summary judgment.  The Defendants have presented summary-judgment affidavits that debunk the purported constitutional violations alleged in the Complaint.  Of particular relevance to Plaintiff's official-capacity claims, the affidavit of Defendant Barrett not only disputes many of the allegations in the Plaintiff's Complaint, but also sets forth in detail the various FCCC and Sheriff's Office policies that are in

place to safeguard constitutional rights of inmates in the correctional facility.  (Barrett Aff., ECF No. 275-1, at ¶¶ 2-30.)  Barrett's Affidavit testifies to a variety of regulations and policies that, among other things—

- prohibit discrimination or harassment on the basis of sex, race, color, religion, age, national ancestry, or disability (*id.*, ¶¶ 5-6);

- prohibit retaliation against anyone for "enforcing their rights" to be free from harassment or discrimination (*id.*, ¶ 6);

- govern the proper use of pepper spray and the use of force against inmates (*id.*, ¶¶ 7-9);

- dictate the proper use of disciplinary restrictions and procedure for implementing them against inmates (*id.*, ¶¶ 10-11);

- dictate the circumstances under which an inmate can be placed on administrative segregation (*id.*, ¶¶ 12-15);

- ensure that attorneys of record have access to their inmate clients and that an inmate's "legal mail" is not censored, monitored, or read (*id.*, ¶¶ 17-18);

- accommodate the religious needs of prisoners, including special diets (*id.*, ¶¶ 20-21);

- provide for proper medical care (*id.*, ¶¶ 21-22);

- provide adequate space for seating, shower access, and toilet access, as well as a clean living environment and adequate meals (*id.*, ¶¶ 24-26);

- prohibit discrimination and the denial of an inmate's access to the courts (*id.*, ¶¶ 27, 29); and

- provide a grievance procedure for an inmate to address any complaint regarding the conditions of confinement (*id.*, ¶ 28).

Because Plaintiff has failed to oppose the Defendants' Motion for Summary Judgment, he has failed to create any genuine issue of material fact as to the existence of or adequacy of these policies.  Nor has Plaintiff offered any evidence under Fed. R. Civ. P. 56 from which to conclude that he has been deprived of any constitutional right as a result of a "policy or custom" of the Sheriff's Office, the FCCC, or the Prosecutor's Office.  Defendants are therefore entitled to summary judgment on the Plaintiff's "official capacity" § 1983 claims.

### 2.    *Individual Capacity Suits*

This Court has already dismissed the individual capacity claims against the late Sheriff Karnes and the Prosecutor Defendants.  (*See infra.*)  Thus, the only "individual capacity" claims that remain are those against Chief Deputy Sheriff Barrett and Shaver, a mental health professional at FCCC.

As to Chief Deputy Barrett, the Complaint contains a slew of allegations that Barrett engaged in various acts, including such as improperly moving Plaintiff to a different cell, strapping Plaintiff into a "torture chair," denying Plaintiff access to the law library and supplies to prepare legal documents, refusing entrance to the facility by Plaintiff's attorney, and denying him grievance forms.  (*See e.g.* Compl., at ¶¶ 54-55, 63, 70, 83, 93, 98, 114, 124.)  Barrett's Affidavit denies these allegations.  (Barrett Aff., ECF No. 275-1, at ¶¶ 34-59.)  And as to instances in which there was some degree of force used against Brown, Barrett (who did not himself participate in these actions) notes that it was Plaintiff who had to be subdued in response to

15

*Plaintiff's* assaultive behavior.  (*Id.*, ¶¶ 46-49.)[6]

Barrett's affidavit demonstrates a valid basis for summary judgment in his favor on the claims asserted against him in his individual capacity.  Because Plaintiff has failed to come forward with evidence to show a genuine issue of fact for trial, summary judgment in Barrett's favor is appropriate on the individual capacity claims.  Fed. R. Civ. P. 56(e)(3).

For similar reasons, Shaver is entitled to summary judgment on the § 1983 individual capacity claims asserted against her.  As an initial matter, Plaintiff's claims against Shaver, such as they are, are vague at best.  Except for his demand for relief, Plaintiff mentions Shaver only three times in his Complaint, alleging that she denied him mental health services, falsely said Plaintiff was suicidal at the prompting of the Sheriff and the Prosecutors, and that she had him put naked in a suicide cell.  (Compl., ECF No. 4, ¶¶ 44, 138, 211.)

Shaver denies the factual allegations Plaintiff levels against her.  In her affidavit, Shaver testified that she did not deny mental health services to Plaintiff at any time.  (Shaver Aff., ECF No. 275-11, at ¶ 6.)  Nor did Shaver work with the Sheriff or Prosecutor's Office in a scheme to have Plaintiff diagnosed as "suicidal."  (*Id.*, ¶¶ 8-10.)  While Shaver acknowledged that Plaintiff was frequently placed on suicide watch while he was incarcerated at FCCC, she made no

---

[6]Barrett's affidavit detailed one instance in which force was improperly used against Plaintiff: a deputy reacted to Plaintiff spitting upon him by punching Plaintiff in the face. (Barrett Aff., ¶ 50.)  The deputy in question was reprimanded after an investigation.  (*Id.*) Barrett calls this incident the only documented instance in which "unjustified" force was used against Plaintiff.  (*Id.*)  Even this incident cannot preclude summary judgment against Barrett in his individual capacity, however, as Barrett was not the actor.  Nor can this incident preserve an "official capacity" claim against Barrett because, as noted previously, Plaintiff has failed to come forth with evidence to show any issue of material fact on the question of whether a policy or custom of any governmental entity was the driving force behind any alleged violation of constitutional rights.

"diagnosis" of him being "suicidal" and placed him under suicide "watch" only in direct response to Plaintiff's statements that he wanted to kill himself or Plaintiff's actions attempting to harm himself.  (*Id.*, at ¶ 21.)  Shaver further denies ever having placed Plaintiff in a "suicide cell" naked; inmates were given a "suicide gown" while on suicide watch, meaning that if Plaintiff was ever naked, it was by his own choosing.  (*Id.* ¶ 20.)

Even assuming the allegations against Shaver in Plaintiff's Complaint could conceivably rise to the level of a constitutional violation, Shaver has roundly denied the allegations, demonstrating a factual basis for summary judgment under Fed. R. Civ. P. 56(c)(1).   Because Plaintiff has failed to come forward with evidence to show a genuine issue of fact for trial, summary judgment is also appropriate in Shaver's favor on the individual capacity claims.  Fed. R. Civ. P. 56(e)(3).

### C.    42 U.S.C. § 1981

Plaintiff's Complaint alleges a claim under 42 U.S.C. § 1981.  Defendants, whether in their individual or official capacities, are entitled to summary judgment on this claim.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C .§ 1981(a).

The touchstone of a § 1981 claim is an impairment of an individual's right to "make and enforce contracts."  Nowhere in Plaintiff's Complaint is there a claim that any of the Defendants impaired his right to make or enforce any "contract."

17

To the extent Plaintiff brings a § 1981 action against any Defendant in his or her official capacity, summary judgment is appropriate for another reason.  The Sixth Circuit has held that "§ 1983 provides an *exclusive remedy* for violations against state actors sued in their official capacities."  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (emphasis added).  Thus, an official capacity lawsuit against a state actor for constitutional violations cannot be brought under § 1981.  *Id.*   Summary judgment for Defendants on this claim is therefore granted.

**D.     42 U.S.C. § 1985**

Plaintiff's Complaint alleges a vast conspiracy involving (among others) the Sheriff's office, jail personnel, prosecutors, and judges to deprive him of a fair trial in his criminal case and other constitutional rights.  In order to make out a valid claim for a conspiracy actionable under 42 U.S.C. § 1985, a plaintiff must establish (1) a conspiracy, (2) existing for the purpose of depriving any person of the equal protection of the laws or of equal privileges or immunities under the law; (3) an act in furtherance of the conspiracy, and (4) an injury in his person or property, or the deprivation of any right or privilege as a citizen of the United States.  *See Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2002).

Defendants vigorously deny the existence of any conspiracy in the affidavits submitted in support of their Motion for Summary Judgment.  (*See* Farbacher Aff., ¶ 14; Krapenc Aff., ¶ 12; Martin Aff., ¶ 12; Barrett Aff., ¶ 59; Shaver Aff., ¶ 27; ECF Nos. 275-1, 275-2, 275-3, 275-4, and 275-11.)  Plaintiff has not filed an opposition to the Defendants' Motion for Summary Judgment, much less offer evidence under Fed. R. Civ. P. 56(e) to address the Defendants' categorical denials of a conspiracy that is conceivably actionable under § 1985.  Accordingly, Defendants are

entitled to summary judgment on Plaintiff's § 1985 claim.[7]

### E.    Title III of the Civil Rights Act of 1964

Plaintiff purports to bring a claim under Title III of the Civil Rights Act of 1964.  (Compl.,

at 2.)  Title III of the Civil Right Act authorizes the Attorney General of the United States to bring

a civil action upon receiving a meritorious complaint in writing from an individual claiming to be

"deprived of or threatened with the loss of his right to equal protection of the laws, on account of

his race, color, religion, or national origin, by being denied equal utilization of any public facility

which is owned, operated, or managed by or on behalf of any State or subdivision thereof."  42

U.S.C. § 2000b.

By its plain terms, Title III of the Civil Rights act authorizes the *Attorney General* to bring

suit to vindicate equal protection rights.  Accordingly, Title III does not create a private right of

action.  *See Davis v. City of Dearborn*, No. 2:09-cv-14892, 2010 U.S. Dist. LEXIS 133546, at

*18 (E.D. Mich. Dec. 17, 2010) (collecting cases holding that no private right of action exists

under Title III). Defendants are therefore entitled to summary judgment on this claim.

### F.    Americans With Disabilities Act

Earlier in this case, the Court allowed Plaintiff's claim against the late Sheriff Karnes in

---

[7]As further support for summary judgment, Defendants cite to testimony from Plaintiff's deposition to illustrate the vague and conclusory nature of Plaintiff's conspiracy theory.  (Mot. Summ. J., ECF No. 275, at 33.)  As noted previously, however, this Court disregards the deposition as summary-judgment evidence for lack of proper authentication.  Nonetheless, the Court recognizes that Plaintiff's Complaint (though, of course, not considered "evidence" in response to summary judgment) alleges a § 1985 conspiracy in nothing other than vague and conclusory terms.  Vague and conclusory allegations of a conspiracy are not enough to sustain a claim for a civil rights conspiracy.  *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

his official capacity for alleged violations of Title II of the ADA. (ECF Nos. 90, 100.)[8] These are necessarily claims alleged in the Sheriff's official capacity (which continue against current Sheriff Scott by operation of law under Fed. R Civ. P. 25(d)), as there is no individual liability under Title II of the ADA. *See Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007). It is unclear whether Plaintiff is bringing his ADA claim against the Sheriff only or against all of the Defendants associated with the FCCC (*i.e.*, Barrett, Shaver, and the Sheriff). Regardless of against whom Plaintiff intended to plead his ADA claim, summary judgment is appropriate.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants' summary-judgment evidence contains an evidentiary showing that the FCCC is ADA-compliant and that Plaintiff's conditions (even assuming they are disabilities within the meaning of the ADA) were accommodated reasonably at FCCC. (Barrett Aff., ECF No. 275-1, at ¶ 30; Odemena Aff., ECF No. 275-7, ¶¶ 5-11; Shaver Aff., ECF No. 275-11, at ¶¶ 5-7.) Plaintiff has failed to oppose summary judgment in any way, much less with evidence to specify what condition qualifies him as an individual with a "disability" within the meaning of the ADA or the manner in which the Defendants violated Title II of the ADA. Summary judgment is therefore appropriate on Plaintiff's ADA claim.

---

[8]Plaintiff's Complaint invokes the ADA generally. (*See* Compl., at 2.) The Court construes this claim, such as it is, as one brought under Title II of the ADA, which applies to public entities. *See* 42 U.S.C. § 12131(1)(B). Title II is applicable to services, programs, or activities of correctional facilities. *See Pennsylvania Dep't of Corr. v. Yetsky*, 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) (Title II applies to state prisons); *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001) (Title II applies to jails)

**III.**           **Conclusion and Order**

For the reasons set forth above, the Plaintiff's Complaint against the late Sheriff Jim Karnes in his individual capacity is **DISMISSED WITH PREJUDICE**.  As to the remaining Defendants who have moved for summary judgment in their individual and official capacities, their Motion for Summary Judgment (ECF No. 275) is **GRANTED.**

With today's Opinion and Order, all Defendants who have been served and appeared in this action have been either dismissed or granted summary judgment.  As noted previously, 25 named Defendants (including those named as Doe defendants) have not been served with summons in this action, *more than five years* after Plaintiff filed his Complaint.  Accordingly, this Court hereby **ORDERS PLAINTIFF TO SHOW CAUSE,** if any he has, within 14 days after service of this Opinion and Order, why this Court should not dismiss this action as to the unserved Defendants pursuant to Fed. R. Civ. P. 4(m).

**IT IS SO ORDERED.**


                                                    **/s/ Gregory L. Frost                    **
                                                    **GREGORY L. FROST**
                                                    **UNITED STATES DISTRICT JUDGE**

21